**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MICHELLE ELAINE WIDENER,**

**Plaintiff,**

**v.**

**17-CV-1348**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. No. 7.  Michelle Elaine Widener ("Plaintiff"), who is represented by

counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review

of the final decision of the Commissioner of Social Security ("the Commissioner")

denying her application for Social Security Income ("SSI") benefits.  This Court has

jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court

are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure.  Dkt. Nos. 11, 13.

## BACKGROUND

Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI in 2011

and was denied.  Tr. at 185. [1]  Plaintiff filed subsequent applications for DIB and SSI,

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 8.

which an Administrative Law Judge ("ALJ") denied on January 10, 2013, after a hearing. Tr. at 185. On October 10, 2013, Plaintiff filed another application for SSI, alleging that she became disabled on September 1, 2013, due to hip/leg/feet problems, diabetes, shoulder problems, high cholesterol, abdominal problems and depression. Tr. at 199, 218. Plaintiff's application was denied at the initial level and she requested review. Tr. at 85-94, 95, 96-99, 102-04. On March 22, 2016, Plaintiff appeared for a hearing before ALJ Bryce Baird with her non-attorney representative and testified, along with an impartial vocational expert ("VE"). Tr. at 84-116. On September 13, 2016, the ALJ found Plaintiff was not disabled and therefore not eligible for SSI. Tr. at 22-41. The Appeals Council denied Plaintiff's request for review on November 3, 2017, making the ALJ's determination the final decision of the Commissioner. Tr. at 1-6. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. §

404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin*

*ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where

the evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982).

## DISCUSSION AND ANALYSIS

### The ALJ's Decision

ALJ Bryce Baird analyzed Plaintiff's claims using the familiar five-step

process described above.  *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2

(W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  Preliminarily, the ALJ acknowledged

that Plaintiff's "alleged onset of disability intrudes on a previously adjudicated period and

therefore is a constructive request to reopen her prior claim[,]" which he declined to do.

Tr. at 25.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity since October 10, 2013, her application date.  Tr. at 27.  At step two, he found

that Plaintiff had the following severe impairments: degenerative disc disease of the

lumbar spine, hip bursitis, plantar fasciitis, depressive disorder, neuropathy, diabetes,

obesity, respiratory disease, and inflammatory arthritis.  Tr. at 27.  At step three, the ALJ

concluded that Plaintiff's impairments did not, either individually or in combination, meet

or equal the Listings, giving special consideration to Listing 1.02 (major dysfunction of

the joint(s) (due to any cause)) and Listing 1.04 (disorders of the spine).  Tr. at 27-29.

Next, the ALJ found that Plaintiff retained the RFC to perform sedentary work as defined by 20 C.F.R. 404.1567(a),[2] except that she can frequently balance and stoop; can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; can occasionally kneel and crouch but never crawl; can frequently reach in all directions including overhead with her left arm; must not be exposed to excessive vibration; and was limited to simple, routine tasks that can be learned after a short demonstration or within 30 days. Tr. at 29-35. Continuing to the fourth step, the ALJ found that Plaintiff is not able to perform her past relevant work. Tr. at 32.

At step five, considering Plaintiff's status as a younger person (44 years old) with a marginal education, the ability to speak English, past work experience as a cook, meat clerk, and cashier, and the aforementioned RFC, the ALJ relied on the VE's testimony to conclude that Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. at 35. Specifically, the VE opined that Plaintiff could work as a final assembler, machine tender, or inspector. Tr. at 36. Accordingly, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act since October 10, 2013, the date the application was filed. Tr. at 36.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. Nos. 11, 13. Plaintiff contends that the ALJ: (1) erred in failing to give good reasons for rejecting the opinion of treating Nurse Practitioner Marcel Rozario ("NP Rozario") (Dkt. No. 11-1, pp. 17-24); (2) compounded this error by "discounting" the opinion of consulting examiner Dr. Donna Miller (Dkt. No. 11-1, pp. 24-26); and (3) failed to properly evaluate her credibility (Dkt. No. 11-1, pp. 26-30). The Commissioner counters that the ALJ: (1) gave sufficient reasons for giving NP Rosario's opinion little weight (Dkt. No. 13-1, pp. 23-24); (2) assessed greater limits than Dr. Miller did, and was not required to base the RFC on a single medical opinion (Dkt. No. 13-1, pp 25-27); and (3) properly evaluated Plaintiff's subjective complaints against the record as a whole (Dkt. No. 13-1, pp. 27-31). For the reasons that follow, this Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion seeking the same.

**NP Rozario's Opinion**

On March 15, 2016, NP Rozario of General Physicians ("GP") completed a medical source opinion questionnaire in which he opined that due to her diabetes, bipolar disorder, polyneuropathy, and chronic pain: Plaintiff's pain would frequently be severe enough to interfere with her attention and concentration needed to perform even simple work tasks; she would be limited to lifting and carrying less than 10 pounds occasionally; she could never twist, stoop, crouch/squat, or climb ladders or stairs; she could walk only 1-2 city blocks without rest or pain; she could sit for a total of about 2 hours and stand/walk for a total of less than 2 hours in an 8-hour work day with normal

7

breaks; her pain impaired her daily functioning; and she would likely be absent for more than four days per month due to her impairments. Tr. at 251-52. In his decision, ALJ Baird considered NP Rozario's opinion, which he described as setting forth "limitations that are presumptively disabling," but assigned it "little weight" in formulating Plaintiff's RFC. Tr. at 34.

Plaintiff contends that the ALJ erred in assigning "little weight" to this opinion, and that the error warrants a remand. This Court does not agree. As an initial matter, a nurse practitioner is not classified as an "acceptable medical source," but rather, as an "other source" under the regulations. *See* 20 C.F.R. § 416.913(d)(1). Opinions from other sources regarding a claimant's ability to work may be considered but are not entitled to controlling weight. *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. Nov. 5, 2008) (citing Social Security Ruling ("SSR") 06-3p). As the ALJ acknowledged, RN Rozario "lacks the specialized medical knowledge required to assess properly the claimant's functioning in relation to her impairments." Tr. at 34-35.

Moreover, contrary to Plaintiff's assertion, the ALJ offered numerous reasons for giving NP Rozario's opinion less than controlling weight, such as: NP Rozario's opinion that Plaintiff could only sit, stand, or walk for about two hours in an 8-hour work day was inconsistent with the medical record and claimant's own allegations about her activities of daily living; the treatment notes did not show muscle atrophy or muscle loss or any other clinical signs that one would expect in a person with such limitations; Plaintiff's strength and neurological exams were largely unremarkable during

the period of review; Plaintiff lost over 100 pounds during the relevant period without

dietary changes so "surely, activity played some role in her success;" none of the

records from GP, including the most recent treatment notes from February 8, 2018

mention anything about Plaintiff's inability to stoop, bend, crouch or lift even 10 pounds;

and on February 8, 2016, one month prior to filling out the questionnaire, RN Rozario

set forth a plan to reduce Plaintiff's pain medication, which the ALJ found suggested

that her condition and concomitant pain had improved.  Tr. at 34, 746.


This Court agrees that the record simply does not support the

"presumptively disabling" mental, postural, and exertional limitations found by NP

Rozario.  For example, in treating Plaintiff between May 2014 and March of 2015,

Psychiatrist Tulia Ortega, MD (Dr. Ortega) found that Plaintiff had good concentration

and attention.  Tr. at 602, 606, 612.  Consulting examiner Susan Santarpia, Ph.D. ("Dr.

Santarpia"), a psychologist, assessed Plaintiff as having only mildly impaired attention

and concentration.  Tr. at 517.  These findings, made by mental health professionals

(one of them a medical doctor), contradict NP Rozario's conclusion that due to pain,

Plaintiff did not have the attention and concentration needed to perform even simple

work tasks.  Tr. at 2501-52.


As the Commissioner notes, with the exception of occasional abnormal

findings on palpitations of the spine or feet, Plaintiff had mostly normal objective findings

in her physical exams.  Tr. at 453 (10/17/13 – gait, sensory, and motor skill

unremarkable; good mood); 461 (9/03/13 – no back pain on palpitation of spine; gait,

sensory, and motor skill unremarkable; good mood); 625 (12/3/2013 – sensation intact and equal bilaterally; gait within normal limits; lower extremity strength equal and bilateral); 631 (12/18/2013 – full ROM in neck; gait, sensory, and motor skill unremarkable; good mood; no apparent depression or anxiety; affect improved since initial visit); 637 (2/14/2014 – full ROM in neck; calm, good mood); 640 (3/29/2014 – full ROM in neck; calm, good mood); 645 (4/30/14 – no spinal tenderness; cranial nerves and motor symmetrical; sensation intact to light touch bilaterally; gait normal; affect and mood normal with no unusual anxiety; joints without evidence of active synovitis; muscular strength symmetrical in upper and lower extremities; mild paravertebral tenderness in the LS spine region); 652 (5/9/2014 – full ROM in neck, supple; gait, sensory and motor skill unremarkable; calm, good mood; no abnormalities in back, only limited flexion; strength of lower extremities equal and bilateral); 656 (5/13/2014 – cranial nerves and motor symmetrical; sensation intact to light touch bilaterally; gait normal; affect and mood normal with no unusual anxiety; joints without evidence of active synovitis; muscular strength symmetrical in upper and lower extremities; mild tenderness in the LS spine region).  These relatively normal findings are not consistent with a person who had the disabling physical impairments described by NP Rozario in his questionnaire.  Tr. at 251-52.

Moreover, Plaintiff's activities of daily living suggested that she was relatively active.  For example, when Plaintiff applied for SSI, she indicated that she had no difficulty with personal care, cooked and prepared all of her own meals, washed dishes, cleaned the bathroom, fed pets, went to church twice weekly, and was able to

10

go out alone.  Tr. at 209.  These activities require far greater capabilities than NP

Rozario attributed to Plaintiff.

This Court finds the ALJ did not err in assigning RN Rozario's very

restrictive opinion little weight.  An ALJ has the authority to compare specific medical

opinions against the record as a whole, and to reject those opinions that are

inconsistent with the evidence.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also*

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. Jan. 18, 2017).  ALJ Baird

properly exercised that authority in rejecting RN Rozario's opinion and provided good

reasons for doing so.

**Dr. Miller's Opinion**

On November 26, 2013, Dr. Miller examined Plaintiff and concluded that

Plaintiff had only mild limitations with heavy lifting, bending, carrying, kneeling, and

squatting.  Tr. at 523.  The ALJ gave Dr. Miller's opinion only "some weight" because "it

does not contemplate later records that establish the claimant had additional physical

impairments likely to erode further her exertional ability, [and] therefore, provides for

greater ability than supported by the record."  Tr. at 34.  Plaintiff contends that having

already rejected RN Rozario's opinion, the ALJ failed to explain how the remaining

record supports the RFC.  This Court does not agree.

As an initial matter, an ALJ's RFC determination need not "perfectly

correspond with any of the opinions of medical sources cited in his decision."  *Matta v.*

*Astrue*, 508 F. App'x 53, 56 (2d Cir. Jan. 25, 2013); *see also Wilson v. Colvin*, 6:16-CV-6509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) (stating that "the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC is 'just made up'").  Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta*, 508 F. App'x at 56 (citing *Richardson v. Perales,* 402 U.S. 389, 399 (1971)).  "All of the relevant medical and other evidence," 20 C.F.R. §§ 416.927, 416.9545(a)(3), includes "statements . . . that have been provided by medical sources, whether or not they are based on formal medical examinations," "descriptions and observations of [the claimant's] limitations . . . provided by [the claimant]," as well as claimant's daily activities, work history, lay evidence, and frequency and duration of medical treatment.  20 C.F.R. § 416.945; SSR 96-8p.

Here, the ALJ relied the opinions of Dr. Santarpia (great weight), Dr. Totin (some weight), and Dr. Miller (some weight); Plaintiff's largely unremarkable objective exam findings (Tr. at 453, 461, 602, 606, 612, 625, 631, 637, 640, 645, 652, 656); record evidence that Plaintiff's pain was well-controlled, that pain medication would be tapered off, and that she was walking without difficulty (Tr. at 624, 746); Plaintiff's robust activities of daily living (Tr. at 209-14), and the fact that Plaintiff had lost 100 pounds without medical intervention, which suggested that she was physically active (Tr. at 602).  This constitutes substantial evidence in support of the ALJ's RFC determination.

Plaintiff clearly disagrees with the ALJ's conclusion that she is not

disabled. However, "[u]nder the substantial evidence standard of review, it is not

enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to

argue that the evidence in the record could support her position." *Hanson v. Comm'r of

Soc. Sec.*, No. 315CV0150GTSWBC, 2016 WL 3960486, at \*12 (N.D.N.Y. June 29,

2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No.

315CV150GTSWBC, 2016 WL 3951150 (N.D.N.Y. July 20, 2016). Rather, a plaintiff

must show "that no reasonable factfinder could have reached the ALJ's conclusions

based on the evidence in [the] record." *Id.* (citing *Brault v. Soc. Sec. Admin., Comm'r*,

683 F.3d 443, 448 (2d Cir. 2012)); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.

1991) (reviewing courts must afford the Commissioner's determination considerable

deference and cannot substitute their own judgment even if they might justifiably have

reached a different result upon a *de novo* review). Plaintiff has failed to meet this

burden.


**The ALJ's Assessment of Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to explain how the clinical findings are

inconsistent with Plaintiff's allegations of pain. Again, this Court does not agree. The

regulations provide a two-step process for evaluating a claimant's assertions of pain.

*Genier v. Astrue*, 606 F.3d 46, 49 (2nd Cir. 2010). First, the ALJ must consider whether

the claimant has a medically determinable impairment that could reasonably be

expected to produce the symptoms alleged. *Id.* (citing 20 C.F.R. § 404.1529(b)). If the

ALJ determines that the plaintiff has such an impairment, the ALJ must then evaluate

the intensity and persistence of claimant's alleged symptoms to determine the extent to which they limit the plaintiff's capacity for work. *Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. May 9, 2018) (citing 20 C.F.R. § 404.1529(c)(1)).

Where the plaintiff's statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based upon consideration of the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication to alleviate pain; (5) treatment other than medication used for relief of pain; (6) measures employed to alleviate pain; and (7) other factors concerning plaintiff's functional limitations and restrictions. *Id.* (citing 20 C.F.R. § 404.1529(c)(3)). The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the record, and must be sufficiently specific to make clear to the plaintiff and to any subsequent reviewers the weight the ALJ gave to the plaintiff's statements and the reason for that weight. *Id.*

In Plaintiff's case, the ALJ determined that her medically determinable impairments (degenerative disc disease of the lumbar spine, hip bursitis, plantar fasciitis, depressive disorder, neuropathy, diabetes, obesity, respiratory disease, and inflammatory arthritis) could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting

14

effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. at 30.   Regarding Plaintiff's depressive disorder, the ALJ noted that at various times when Plaintiff presented for treatment, she was described as "smil[ing]," and "bright and animated" with a full range of affect and no clinical signs of cognitive deficit or depression, and that she claimed to be "happy with how she [was] feeling" and "[did] not want any changes."  Tr. at 33.  The ALJ noted that Plaintiff's claims of disabling back pain were belied by largely unremarkable clinical exam findings (Tr.  at 31, 631); records showing that Plaintiff was discharged twice without treatment from hospital emergency rooms (Tr. at 30, 451, 510), notations from her medical file that her pain was well-controlled and she was walking without difficulty (Tr. at 31, 624); a report that Plaintiff was improving and experiencing 70% less pain with physical therapy (Tr. at 31, 532); and her relatively vigorous activities of daily living (Tr. at 28, 209-14).

These are all permissible factors for the ALJ to consider in determining a Claimant's credibility pursuant to 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1).  While conservative treatment alone is not grounds for an adverse credibility finding, *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), the ALJ may take it into account along with other factors.  *See, e.g., Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. Apr. 29, 2014) (holding that the ALJ was permitted to weigh a claimant's "conservative treatment" regimen in determining that claimant's credibility); *Dixon v. Berryhill*, 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) (stating that "Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's

statements about their symptoms not credible based, inter alia, on a conservative treatment record") (citations and quotation marks omitted) (collecting cases); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ properly discounted Plaintiff's claim that he was disabled where he took care of his one-year-old child, changed diapers, and sometimes vacuumed and washed dishes).

Based on the foregoing, this Court finds that the ALJ's credibility assessment was free from legal error and that his RFC determination is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
             June 27, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**